UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **ANDREW WALKER,** | ) | |
| | ) | |
| *Plaintiff,* | ) | **CAFN: <u>25CV6163</u>** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CITY OF CLARKSTON,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| AND | ) | |
| | ) | |
| **CHRISTNE HUDSON**, **in her** | ) | |
| **Individual capacity** | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## <u>COMPLAINT</u>

The Plaintiff, Sergeant Andrew Walker ("Sgt. Walker"/"Plaintiff"), complaining of the Defendant, City of Clarkston Police Department, ("CCPD") and other Defendants, using Section 1983 to vindicate his rights under the First Amendment of the U.S. Constitution while also vindicating his rights under the Georgia Whistleblower Act.

## <u>INTRODUCTION</u>

The City of Clarkston hired a third party investigator to investigate serious allegations of public concern made by Plaintiff against the City's Chief of Police

and Assistant Chief of Police. During the investigation, Mr. Walker was interviewed, under oath, providing sworn testimony with respect to what he believed to be violations of the law by the City of Clarkston's Assistant Chief of Police, as well as its Chief of Police. Approximately two months later, Chief Hudson terminated his employment as one of her final acts prior to retiring. Now, Mr. Walker files this suit to vindicate his rights under the First Amendment and Georgia Whistleblower Act.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1331, as this action arises under federal law, specifically 42 USCS § 1983 for alleged violations of constitutional rights. Additionally, this Court has jurisdiction over the Title VII claims pursuant to 42 USCS § 2000e-5.

2. This Court has personal jurisdiction over the City of Clarkston as it is located within the State of Georgia.

3. This Court is the proper venue for this case pursuant to 28 USCS § 1391, as the defendant resides in this judicial district, and a substantial part of the events giving rise to the claims occurred in this district.

## PARTIES

4. Plaintiff Andrew P. Walker is a resident of Snellville, Georgia.

5. Defendant City of Clarkston is a municipal corporation organized under the laws of the State of Georgia with a principal place of business in Clarkston, Georgia.

6. Christine Hudson, at all times relevant was the Chief of Police for the City of Clarkston and is being sued in her individual capacity. At all times relevant, Hudson has a duty to know law that protected the constitution and statutory rights of the Plaintiff. At all times relevant, Hudson was acting under color of state law, including at the time that she terminated the employment of Plaintiff.

## STATEMENT OF FACTS

### I.        About Mr. Walker

7. Plaintiff was born in Providence, Rhode Island, but attended elementary, junior high school, and high school in Atlanta, Georgia, graduating from Peachtree City Highschool.

8. After graduating Highschool, Mr. Walker joined the Marine Corps, serving four years of active duty with an honorable discharge.

9. After the Marine Corps, Mr. Walker moved back to Georgia and became a Deputy Sheriff with the Clayton County Sheriff's Department, working for approximately eighteen (18) months.

10. After leaving Clayton County Sheriff Office, Mr. Walker joined the Fayetteville Police Department, patrol unit, where he worked for about seven (7) years, attaining the rank of master patrol officer.

11. After leaving the Fayetteville Police Department, Mr. Walker joined the City of College Park Police Department as a master patrol officer, with his last duty assignment being state certification officer; City of College Park earned its first state certification under his lead.

12. The next law enforcement job Mr. Walker had was with the City of Clarkston, starting in 2018.

**II.      Sergeant Walker's History With the City of Clarkston Police Department.**

13. Plaintiff was a Sergeant with the City of Clarkston Police Department ("CCPD").

14. Plaintiff was the second (2nd) highest senior member of the department outside of the Chief.

15. On or about September 13, 2024, CCPD attempted to discipline the Plaintiff with a one-day suspension for allegedly arresting someone without probable cause.

16. Plaintiff filed a grievance regarding this disciplinary action.

17. In March 2025, Plaintiff had an administrative appeals hearing before a hearing officer regarding his grievance.

18. On March 17, 2025, one day after Plaintiff's administrative appeals hearing, CCPD reduced the Plaintiff's salary from approximately $83,000 to $79,300.

19. CCPD claims this salary reduction was correcting an "oversight," where a temporary 5% increase for training duties wasn't removed when those duties ended; this was not an oversight, and the Plaintiff was entitled to said 5%.

### III. Plaintiff requests Peace Officer Standards and Training (POST) do an investigation regarding Assistant Chief Todd making false statements under oath and his conduct toward Mr. Walker and at least two other law enforcement officers.

20. Less than twenty-one (21) days after reducing Plaintiff's salary unlawfully, on April 10, 2025, Plaintiff wrote to the director of Georgia POST Council's Investigations Division, Alex Mear—copying Clarkston's City Manager on this email—requesting an investigation into the Deputy Chief's conduct of alleging a false statement under oath.

21. The Georgia POST Director wrote back on April 17, 2025, advising that Plaintiff must start within his chain of command but could also contact Clarkston's elected officials as well as the City Manager:

> "Good Afternoon Mr. Walker,
>
> Thank you for your email regarding your concerns about your supervisor and the request for an investigation by the Georgia POST Investigation Division.
>
> Please be advised that the proper procedure in cases such as this is for your department to first conduct an internal inquiry into the matter. Georgia POST does not serve as the primary investigative authority for internal personnel disputes within local police departments. You can also bring your concerns to the City's governing authority, such as

the City Manager, Mayor's Office, or a designated oversight board—depending on your municipality's structure.

Feel free to contact me if you have any other questions or concerns. Director A.T. Mears"

22. In response, on May, 1, 2025, mindful that the Clarkston City Manager was copied on the request for an investigation to POST, Mr. Walker contacted the City Manager with the same request to investigate Assistant Chief Xavier Todd, electing not to follow internal procedure because nothing would be accomplished if Mr. Walker complained to Chief Hudson:

> "Good afternoon Mrs. Miller-Thornton, I wanted to follow up with you regarding this email received on April 17th. Is there anything else I need to do to request a formal investigation regarding this matter? I want to thank you for your time and consideration.
>
> Sgt. Andrew P. Walker"

23. On May 7, 2025, the City Manager responded with the following:

> "Good morning Sgt. Walker,
>
> I have received your inquiry regarding request of a formal investigation. Please allow an opportunity for this office to determine course in this matter. Do expect to receive follow-up response no later than Monday, May 12th, 2025."

24. On May 13, 2025, the City Manager wrote the following:

> "Good evening Sgt. Walker,
>
> It appears that Section I-015: Employee Misconduct/Internal Affairs of the Clarkston Police Department's Standard Operating Procedures manual offers appropriate avenue for the filing/review of your subject

complaint. The procedures are provided for the investigation and prompt and just disposition of complaints and allegations of misconduct involving personnel of the Clarkston Police Department.

Chain of command in the administration of any investigation of the matter would more than likely need to exclude Assistant Chief Todd being that he is the subject of the allegation(s).

**I am also considering a course for 3rd party investigation and am awaiting legal comment on a proposed process**.

In the interim, and as interpreted, an appropriate method of presenting the allegation(s) for consideration of investigation is to present complaint in the manner prescribed by Section I-015 of the department's standard operating procedures."

Please contact me if you should have any questions or concerns regarding the details of this correspondence.

Thank you,

CMThornton"

24. The City Manager hired an outside firm, which had a representative who contacted Billy Grogan, Senior Vice President of Sumter Local Government Consulting to conduct an investigation into the allegations made by Plaintiff and others.

25. Approximately two months later, on August 5, 2025, "the City of Clarkston signed a contract with Sumter Local Government Consulting to provide an independent, third-party review of these alleged personnel issues and a written report of our findings."

26. On September 11, 2025, Mr. Grogan interviewed Plaintiff under oath and Plaintiff made allegations of unlawful conduct against Chief Hudson and Assistant Chief Todd.

27. Plaintiff was terminated approximately two months later while on sick leave.

28. In addition to the above adverse action of termination, after filing his grievance regarding the one suspension discussed above, Plaintiff experienced multiple retaliatory actions, including but not limited to the following:

    a. Plaintiff was removed from two offices.

    b. Plaintiff was reassigned from State Certification Manager/Community Relations to road patrol.

    c. Plaintiff was required to return his Ford F-150 vehicle that had been issued to him when he was promoted to State Certification Manager/Community Relations.

    d. Plaintiff was required to return his city-issued credit card.

    e. Plaintiff's fleet maintenance responsibilities were taken away from him.

    f. Plaintiff's police equipment and inventory responsibilities were taken away from him.

g. Plaintiff was reassigned to the road as the Patrol Supervisor/Field Training Officer for an undetermined amount of time.

h. Plaintiff was ordered to randomly cover the road on patrol whenever someone called out of work, while the Patrol Commander never called off-duty officers to fill the shortages as had always been done prior to Plaintiff filing his grievance.

i. Plaintiff was ordered to answer all police-related calls and vehicle identification number checks in the lobby.

j. Lieutenant Trumble ordered all civilian employees and on-duty supervisors to contact Plaintiff if there was a call for service in the lobby of the police department—the sergeant previously assigned Plaintiff's position was never required to perform these lobby duties.

k. Plaintiff was ordered to cover entire shifts for the Georgia Crime Information Center/National Crime Information Center (GCIC/NCIC) Clerk if she called out of work, including issuing Adult Entertainment/Alcohol Permits, which Plaintiff was given only a ten (10)-minute instruction on how to do—while Mr. Walker was supposed to be managing state certification.

l. Plaintiff was ordered to meet with every apartment complex to gather information such as phone numbers and emails.

m. Plaintiff received an email on December 17, 2024, ordering him to pick up GCIC/NCIC paperwork from DeKalb County Police Department three times per week.

n. Plaintiff received a written reprimand for insubordination regarding the GCIC/NCIC paperwork without any prior reminder or warning.

29. Plaintiff has not been able to find employment since his termination.

## CLAIMS FOR RELIEF

### COUNT I
**§ 1983-First Amendment Retaliation**
**(against Hudson)**

30. Plaintiff repeats and realleges the allegations set forth in paragraphs (including subparagraphs) 1 through 29 as if fully set forth herein.

31. Based on the facts incorporated to support this Count, Plaintiff engaged in constitutionally protected speech, including speaking under oath as a part of a City-sponsored investigation regarding allegations, inter alia, of unlawful conduct.

32. Based on the facts incorporated to support this Count, Plaintiff suffered adverse employment actions.

33. After filing his grievance, Plaintiff experienced numerous retaliatory employment actions (adverse and otherwise), including salary reduction, removal from offices, reassignment from State Certification

Manager/Community Relations to road patrol, removal of his vehicle and credit card, and assignment of clerical duties, as detailed in paragraphs (including subparagraphs) incorporated to support this Count.

34. Based on the facts incorporated to support this Count, there is a causal connection between Plaintiff's protected speech and the adverse employment actions.

35. Based on the facts incorporated to support this Count, the retaliatory employment actions (adverse and otherwise) began after Plaintiff filed his grievance, intensified after his administrative appeals hearing, and became even more intense after Plaintiff requested P.O.S.T. to investigate Hudson and Assistant Chief Todd, while also testifying during a City-sponsored investigation of Plaintiff's superior officers.

36. Plaintiff is entitled to all permissible damages under law due to Defendants violating Plaintiff's protected Frist Amendment Rights.

## COUNT II
### VIOLATION OF THE GEORGIA WHISTLEBLOWER'S ACT
*(City of Clarkston)*

37. Plaintiff repeats and realleges the allegations set forth in paragraphs (including subparagraphs) 1 through as if fully set forth herein.

38. Based on the incorporated facts to support this Count II, Plaintiff was a public employee of Defendant City of Clarkston, which is a public employer as contemplated by the Georgia Whistleblower Act.

39. Based on the incorporated facts to support this Count II, Plaintiff disclosed what he reasonably believed to be unlawful conduct to Georgia P.O.S.T and the City Manager of Clarkston, disclosures that sparked a third party investigation regarding, inter alia, Plaintiff's said allegations.

40. Based on the incorporated facts to support this Count II, Plaintiff was interviewed under oath as a part of the investigation into Plaintiff's allegations about his superiors.

41. Plaintiff was terminated approximately two months after testifying in the investigation as one of the final acts from Chief Hudson on her way to retirement—noting that Plaintiff's termination came within weeks of the investigation closing.

42. Because of Defendant's violation of Plaintiff's protected rights under the Georgia Whistleblower act, Mr. Walker is entitled to all permissible damages under governing law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

   A.  That summons be issued in this case for all Defendants;

B. That this Court order a jury trial on all issue not resolved by the Court as a matter of law;

C. That Plaintiff be awarded compensatory damages, punitive damage (not against the City of Clarkston), special damages and all other damages Plaintiff is entitled to as a matter of law;

D. Attorney's fees and costs pursuant to 42 USCS § 1988 for the Section 1983 claims;

E. Pre-judgment and post-judgment interest; and

F. Such other relief as the Court deems just and proper.

Respectfully Submitted this June 8, 2026,

**/s/ MARIO B. WILLIAMS**
Mario B. Williams
Ga. Bar No. 235254

**HUMANITY DIGNITY AND RIGHTS LLC**
**MARIO B. WILLIAMS, ESQUIRE**
Life Time Work - Buckhead - at Phipps Plaza
3480 Peachtree Road, NE, Second (2nd) Floor
Atlanta, Georgia 30326
Tel.: (470) 257-2485
Email: mwilliams@hdrattorneys.com
*Counsel for Andrew Walker*